Affirmed and Opinion filed April 9, 2009








Affirmed and Opinion filed April 9, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00762-CV

____________

 

OBSTETRICAL AND GYNECOLOGICAL
ASSOCIATES, P.A., Appellant

 

V.

 

ANDRE MCCOY, INDIVIDUALLY AND AS
PERMANENT GUARDIAN OF SHANNON MILES MCCOY, AN INCAPACITATED PERSON, Appellee

 



 

On Appeal from the Probate
Court No. 3

Harris County, Texas

Trial Court Cause No. 352,923-401

 



 

O P I N I O N








In this accelerated, interlocutory appeal, Obstetrical and
Gynecological Associates, P.A., (AOGA@) contends that
the trial court abused its discretion by denying OGA=s motion to
dismiss under Chapter 74 of the Texas Civil Practice and Remedies Code, because
the appellee failed to serve an expert report specifically addressing OGA=s conduct.  OGA
contends that an expert report addressing OGA=s conduct was
required because the appellee alleged not only that OGA was vicariously liable
for the conduct of others, but also that OGA was directly liable for health
care liability claims.  For the reasons explained below, we disagree and affirm
the trial court=s judgment.

Background

In September 2004, Shannon Miles McCoy was admitted to
Woman=s Hospital of
Texas to give birth to her first child.  There, she was treated by
obstetricians Mark A. Jacobs, M.D., and Debra Clark Gunn, M.D, both employees
of OGA.  Shannon experienced complications and ultimately suffered serious
injuries.

In 2006, appellee Andre McCoy, individually and as
permanent guardian of Shannon Miles McCoy, brought this lawsuit against OGA, Dr.
Jacobs, Dr. Gunn, and others, for alleged medical negligence in the care and
treatment rendered to Shannon.  In the lawsuit, McCoy alleged that OGA was
vicariously liable for the conduct of Drs. Jacobs and Gunn under the doctrine
of respondeat superior and as provided in the Texas Professional Association
Act.  McCoy also served four separate expert reports prepared by Molly Brewer,
M.D.  Dr. Brewer prepared one expert report for each of the originally named
defendants, except for OGA.  None of the expert reports specifically addressed
OGA=s conduct.  OGA
did not file any objections to Dr. Brewer=s reports.

In January 2008, McCoy filed a third amended petition that
included additional allegations of liability against OGA.  McCoy alleged that
OGA and Drs. Jacobs and Gunn were grossly negligent, that Drs. Jacobs and Gunn
were vice-principals of OGA, and that OGA Aauthorized and/or
ratified@ the conduct of
Drs. Jacobs and Gunn.  McCoy further alleged that Drs. Jacobs and Gunn were
acting in the course and scope of their employment at the time they cared for
Shannon Miles McCoy in September 2004.








On February 22, 2008, OGA filed a motion to dismiss
asserting that McCoy failed to timely serve an expert report as required by
Chapter 74 of the Texas Civil Practice and Remedies Code.  McCoy=s response to the
motion included, among other things, the representation that Ano direct
negligence claim has been advanced against Defendant OGA and Plaintiffs have
only alleged vicarious liability against Defendant OGA.@  Therefore, McCoy
asserted, it was not necessary to mention OGA by name in the expert reports
concerning Drs. Jacobs and Gunn, because OGA, as the doctors= employer, was
sufficiently implicated in those reports.

The trial court initially granted OGA=s motion to
dismiss.  McCoy then filed a motion for reconsideration, and on July 25, 2008,
the trial court granted the motion for reconsideration and denied OGA=s motion to
dismiss.  This interlocutory appeal followed.

I.        McCoy=s Challenge to
Jurisdiction

Before reaching the merits of OGA=s appeal, we must
first address McCoy=s assertion that this court lacks
jurisdiction to hear OGA=s appeal because the trial court granted a
request for a thirty-day extension.  Specifically, McCoy contends that he
included in his motion for reconsideration a request for a thirty-day extension
to cure any alleged deficiencies in his expert reports as provided under
section 74.351(c).  See Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(c) (Vernon
Supp. 2008) (providing that the trial court may grant one thirty-day extension
to the claimant to cure deficiencies in an expert report).  Because the trial
court granted the motion for reconsideration, McCoy argues, it granted this
requested relief and therefore its order is not appealable.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 51.014(a)(9)
(Vernon 2008) (permitting interlocutory appeal of order that denies relief
sought under section 74.351(b), Aexcept that an
appeal may not be taken from an order granting an extension under [s]ection
74.351@); Ogletree v.
Matthews, 262 S.W.3d 316, 321 (Tex. 2007) (holding that if a deficient
report is served and the trial court grants a thirty-day extension, that
decision is not subject to appellate review even if it is coupled with a motion
to dismiss). 








We disagree that we have no jurisdiction over this appeal. 
First, and most important, the trial court=s order does not
grant any extension of time to McCoy.  Second, McCoy requested the relief of an
extension alternatively if the trial court found that Dr. Brewer=s expert reports
were deficient.  During the hearing on the motion for reconsideration, the
trial court indicated that it did not believe a report as to OGA was necessary,
and that is why it denied OGA=s motion to dismiss.  Nothing in the
record indicates that the trial court found Dr. Brewer=s expert reports
to be deficient.  Therefore, the trial court did not need to reach McCoy=s alternative
request for an extension of time to cure deficient expert reports. 
Accordingly, because the trial court did not grant any extension of time to
cure deficiencies under section 74.351(c), this court has jurisdiction over OGA=s interlocutory
appeal.  See Tex. Civ. Prac. & Rem. Code Ann. ' 51.014(a)(9). 

II.         Did the Trial Court Err
in Denying OGA=s Motion to Dismiss?

OGA contends that the trial court abused its discretion in
denying its motion to dismiss, because McCoy=s expert reports
wholly failed to implicate OGA.  OGA asserts that the plain language of section
74.351 requires an expert report addressing each health care provider sued, and
it is undisputed that OGA is a health care provider within chapter 74.
Therefore, OGA maintains, all of McCoy=s claims against
it, including both the vicarious and the direct-liability claims, should have
been dismissed.  At a minimum, however, OGA argues that the direct-liability
claims alleged in McCoy=s third amended petition must be dismissed
for McCoy=s failure to provide an expert report specifically
addressing OGA=s conduct. 

In response, McCoy claims that OGA has waived all of its
objections to Dr. Brewer=s reports because OGA did not timely file
its objections.  Additionally, McCoy argues that Dr. Brewer=s reports
criticizing the conduct of Drs. Jacobs and Gunn sufficiently implicated OGA
because the doctors are OGA=s employees, OGA is specifically
identified as Dr. Gunn=s employer in the reports, and OGA is
vicariously liable for the negligence of its physician employees.  Finally,
McCoy asserts that the only claims made against OGA are based on vicarious
responsibility for the doctors= conduct, not direct liability based on
OGA=s negligence.








A.         Standard of Review

When a trial court rules on a defendant health care
provider=s motion to
dismiss a health care liability claim, we review the ruling for an abuse of
discretion.  See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,
46 S.W.3d 873, 877B78 (Tex. 2001); Rittmer v. Garza,
65 S.W.3d 718, 721 (Tex. App.BBHouston [14th Dist.] 2001, no pet.).  An
abuse of discretion occurs when the trial court acts in an unreasonable and
arbitrary manner, or when it acts without reference to any guiding rules or
principles.  Walker v. Gutierrez, 111 S.W.3d 56, 62 (Tex. 2003).  A
trial court will be deemed to have acted arbitrarily and unreasonably if the
trial court could have reached only one decision, yet reached a different one. 
Teixeira v. Hall, 107 S.W.3d 805, 807 (Tex. App.BBTexarkana 2003, no
pet.).  To that end, a trial court abuses its discretion when it fails to
analyze or apply the law correctly.  In re Sw. Bell Tel. Co., L.P.,
226 S.W.3d 400, 403 (Tex. 2007) (citing In re Kuntz, 124 S.W.3d 179, 181
(Tex. 2003)).  To the extent resolution of the issue presented requires
interpretation of the statute, we review the ruling under a de novo standard. See
Buck v. Blum, 130 S.W.3d 285, 290 (Tex. App.CHouston [14th
Dist.] 2004, no pet).

B.         The Expert
Report Requirement








Under former section 74.351(a) of the Civil Practice and
Remedies Code, a claimant in a health care liability claim was required to
serve on each party or the party=s attorney, not
later than the 120th day after the date the claim was filed, one or more expert
reports, with the curriculum vitae of each expert listed in the report.  See
Act of June 2, 2003, 78th Leg., R.S., ch. 204, ' 10.01, 2003 Tex.
Gen. Laws 847, 875, amended by Act of May 18, 2005, 79th Leg., ch. 635, ' 1, 2005 Tex. Gen.
Laws 1590, 1590 (current version at Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(a)).[1] 
Each physician or health care provider sued must be addressed in an expert
report.  Id.  Within
chapter 74, a professional association is considered a Ahealth care
provider.@  Tex. Civ. Prac. & Rem. Code Ann. ' 74.001(a)(12)
(Vernon 2005).

          Failure
to timely serve an expert report as to a particular defendant results in the
trial court=s dismissal of the claims against that defendant with
prejudice, along with the award of reasonable attorney=s fees and court
costs to the defendant.  Id. _ 74.351(b).  In fact, if the
plaintiff does not timely serve an expert report as to a particular defendant,
the trial court has no discretion to do anything other than dismiss the case
with prejudice.  See id.; Estate of Regis ex rel. McWashington v.
Harris County Hosp. Dist., 208 S.W.3d 64, 67B68 (Tex. App.BBHouston [14th
Dist.] 2006, no pet.).

Under section 74.351(r)(6), an expert report is defined as
a written report by an expert that provides a fair summary of the expert=s opinions
regarding (1) the applicable standard of care; (2) the manner in which the care
provided failed to meet that standard; and (3) the causal relationship between
that failure and the injury, harm, or damages claimed.  Tex. Civ. Prac. &
Rem. Code _ 74.351(r)(6); Patel v. Williams ex rel. Estate of
Mitchell, 237 S.W.3d 901, 904 (Tex. App.CHouston [14th
Dist.] 2007, no pet.).  An expert report need not marshal all the
plaintiff=s proof, but it must include the expert=s opinion on each
of these statutorily required elements.  Palacios, 46 S.W.3d at 878.  

With this in mind, we now turn to our analysis of OGA=s issue.

C.        Analysis

1.         Waiver








As a threshold matter, we must address McCoy=s claim that OGA
waived all of its objections to Dr. Brewer=s reports.  McCoy
points out that a defendant whose conduct is Aimplicated@ in an expert
report must file and serve any objection to the sufficiency of the expert
report not later than the twenty-first day after the date the report is served,
or all objections are waived.  See Act of June 2, 2003, 78th Leg., R.S.,
ch. 204, ' 10.01, 2003 Tex. Gen. Laws 847, 875, amended by
Act of May 18, 2005, 79th Leg., ch. 635, ' 1, 2005 Tex. Gen.
Laws 1590, 1590 (current version at Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(a) (Vernon
Supp. 2008)).  McCoy asserts that OGA did not object to the timeliness or
sufficiency of Dr. Brewer=s reports until February 22, 2008, about
one year and seven months after the twenty-one day deadline.

According to McCoy, OGA=s conduct was
sufficiently implicated to trigger the duty to object to the sufficiency of the
expert reports because Dr. Brewer=s reports
addressed the conduct of OGA=s employees, Drs. Jacobs and Gunn, the
reports identified Dr. Gunn as OGA=s employee, and
McCoy=s original
petition alleged that OGA was vicariously liable for the conduct of Jacobs and
Gunn under the doctrine of respondeat superior and the requirements of the
Texas Professional Association Act.  See Troeger v. Myklebust, 274
S.W.3d 104, 110 (Tex. App.CHouston [14th Dist.] 2008, pet. denied)
(rejecting claim that conduct of dentist, who was sole defendant, was not
implicated because her name was omitted from expert report and holding that
dentist waived challenges to expert report by failing to raise objections
within twenty-one days after service); Univ. of Tex. Sw. Med. Ctr. v. Dale,
188 S.W.3d 877, 879 (Tex. App.CDallas 2006, no pet.) (holding that
medical center was not required to be named in expert report addressing its
residents= conduct because plaintiffs alleged no
direct-liability claims against it and noting that medical center was
implicated in report and so waived all its objections when it failed to object
to sufficiency of report within twenty-one days after service).








In response, OGA disputes that its conduct was implicated
by Dr. Brewer=s reports; OGA also argues that it was under no duty
to file objections to the reports within twenty-one days after service of the
reports because McCoy failed to serve an expert report addressing OGA=s conduct.  See
Poland v. Grigore, 249 S.W.3d 607, 616 (Tex. App.CHouston [1st
Dist.] 2008, no pet.) (holding that a complaint that a report was not timely
served was not subject to the twenty-one day deadline to object to the
sufficiency of a report under former section 74.351(a)).  Further, OGA asserts
that McCoy=s reliance on Dale is misplaced.  In Dale,
the court held that the expert report, which addressed only the negligence of
the medical center=s residents, was not required to mention
the medical center by name because the plaintiffs were not alleging that the
defendant medical center was directly negligent.  See Dale, 188 S.W.3d
at 879.  Here, OGA complains, McCoy has alleged direct liability against it,
pointing to McCoy=s allegations of liability based on the
Texas Professional Association Act, gross negligence, and vice-principal
theories.  Therefore, OGA contends, McCoy was required to provide an expert
report specifically addressing the conduct for which OGA was allegedly directly
liable.

Our supreme court has recently considered the question
whether a defendant who is alleged to be vicariously liable for the conduct of
another is sufficiently implicated in an expert report when it is not named in
the report and its conduct is not directly addressed.  See Gardner v.
U.S. Imaging, Inc., 274 S.W.3d 669 (Tex. 2008) (per curiam).  In that case,
the Gardners brought a health care liability suit against Dr. Berney Keszler,
who performed a lumbar-epidural procedure on Craig Gardner, and U.S. Imaging,
Inc., d/b/a SADI Pain Management (ASADI@), the owner and
operator of the facility where the procedure was performed.  Id. at
670.  In the supreme court, SADI argued that it was not served with an expert
report because the report that was served addressed only Dr. Keszler=s conduct and did
not mention SADI or implicate its behavior.  Id. at 671.  The supreme
court rejected this argument, holding that A[w]hen a party=s alleged health
care liability is purely vicarious, a report that adequately implicates the
actions of that party=s agents or employees is sufficient.@  Id. at
671B72.








Although Gardner involved a corporation rather than
a professional association, we conclude that its reasoning is equally
applicable here.  Therefore, we reject OGA=s assertion, at
least concerning Apurely vicarious@ liability claims,
that Dr. Brewer=s expert reports concerning Drs. Jacobs
and Gunn did not sufficiently implicate OGA.  See id.; Ctr.
for Neurological Disorders, P.A. v. George, 261 S.W.3d 285, 295 (Tex. App.CFort Worth 2008,
pet. denied) (holding that expert report that sufficiently addressed certain
claims against doctor employed by professional association was sufficient as to
claims against professional association based on doctor=s negligence
because the doctor=s negligence is imputed to the association
under the Professional Association Act).[2] 
Here, OGA did not object to Dr. Brewer=s reports
concerning the conduct of Drs. Jacobs and Gunn within twenty-one days, and so,
as to any claims based on vicarious liability, OGA waived any complaints
concerning the sufficiency of the reports.  See Ogletree, 262 S.W.3d at
321B22.  Accordingly,
the trial court did not err in denying OGA=s motion to
dismiss vicarious-liability claims based on the negligence of Drs. Jacobs and
Gunn.








But OGA contends that in addition to the
vicarious-liability claims covered by Dr. Brewer=s reports as to
Drs. Jacobs and Gunn, McCoy also leveled direct-liability claims against it,
for which McCoy has provided no expert report.  A plaintiff must provide an
expert report as to each health care provider against whom he has alleged a
health care liability claim, or the claim must be dismissed on the health care
provider=s motion.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 74.351(b)
(providing that a trial court Ashall@ dismiss a claim
when expert reports are not served within 120 days).  If OGA is correct that
McCoy has asserted claims of direct negligence against it, then McCoy was
required to serve OGA with an expert report specifically addressing its conduct
rather than just the conduct of Drs. Jacobs and Gunn for which OGA is
vicariously liable.  Because McCoy served no such reportCeither at the time
he served the other reports or after he filed the third amended petition in
which he made the additional allegations OGA complains ofCOGA could not have
waived any complaints about its sufficiency.  See Poland, 249
S.W.3d at 615B16; see also Ogletree, 262 S.W.3d at 320
(noting that Aa deficient report differs from an absent report@).  Therefore, we
must consider whether, as OGA contends, McCoy has alleged any direct-liability
claims against it.

2.         Did McCoy Assert
Direct-Liability Claims Against OGA?

OGA maintains that the trial court abused its discretion in
failing to grant OGA=s motion to dismiss McCoy=s claims against
it because McCoy alleged that OGA was liable under both vicarious- and
direct-liability theories, but served no expert reports specifically addressing
OGA=s allegedly
negligent conduct as a professional association.  In response, McCoy repeatedly
asserts in his appellate brief that the only basis for OGA=s liability is
vicarious liability, and it is not asserting any direct-liability claims
against OGA.  McCoy=s counsel maintained this position at oral
argument.

In their briefs, the parties concentrate much of their
briefing on whether OGA was sufficiently implicated in Dr. Brewer=s experts reports
concerning Drs. Jacobs and Gunn.  However, as noted above, the supreme court
has recently held that when a party=s alleged health
care liability is Apurely vicarious,@ a report that
adequately implicates the actions of that party=s agents or
employees is sufficient.  Gardner, 274 S.W.3d at 671B72.  Therefore, we
will turn to OGA=s argument that McCoy alleged
direct-liability claims against it and, consequently, section 74.351 required
McCoy to provide an expert report addressing OGA=s conduct as a
professional association.

a.         Alleged Liability Under
the Professional Association Act








First, OGA contends that Texas law interprets a claim
against a professional association for the acts of its physician-principals
under the Texas Professional Association Act as a direct-liability claim
against the professional association.  See Battaglia v. Alexander,
177 S.W.3d 893, 902 (Tex. 2005); Kettle v. Baylor Med. Ctr. at
Garland, 232 S.W.3d 832, 842 (Tex. App.CDallas 2007, pet.
denied); see also Tex. Rev. Civ. Stat. Ann. art. 1528f, ' 24 (Vernon 2003
& Supp. 2008) (providing that a professional association Ashall be jointly
and severally liable@ with the officer or employee furnishing
professional services for, among other things, the officer=s or employee=s negligence when
in the course of employment for the association).  Consequently, it argues,
McCoy was required to serve an expert report addressing OGA=s conduct.

In Battaglia, the supreme court considered, among
other things, whether two professional associations were directly liable for
the plaintiffs= health care liability claims when one of their
physicians obtained a directed verdict and a jury failed to find the other
physician negligent.  177 S.W.3d at 901B902.  On the facts
before it, the court stated that A[e]ach
professional association had direct liability for the actions of its
physician-principal in the course of his employment, and vicarious liability
for the actions of its agents and employees in the course of their employment.@  Id. at
902.  Recognizing that a professional association can act only through
individuals, the court went on to state that A[i]f the
physicians were negligent, the professional associations were likewise
negligent, since each association acted only through its physician-principal.@  Id.  The
court agreed with the professional associations that they could not have been
negligent if their respective physician-principals were not negligent, but
determined that the physician=s lack of negligence was not established
at trial.  Id. at 903.  Attributing some of the apparently inconsistent
results of the trial to confusion generated by the parties= positions below
and the trial court=s charge, the court went on to instruct
that Athe jury should
have been asked only whether the physicians were negligent; the consequences to
the professional associations follow as a matter of law.@  Id.








Although OGA seizes on the Battaglia court=s statement that
the professional association had Adirect liability@ for the actions
of its physician-principals, the opinion does not advance its argument that a
separate expert report is therefore required.  Battaglia illustrates
that a professional association acts through its principals, agents, and
employees, and so can be Adirectly@ liable for the
actions of its principals in the sense that the principal=s actions are
considered the actions of the association itself, as distinguished from
vicarious liability for the actions of employees or agents.  See id. at
902B03.  As the court
noted, the only question at trial should have been Awhether the
physicians were negligent@; the legal consequences to the
professional association would follow from the answer to that question.  See
id. at 903.  Thus, the Battaglia court=s discussion of
direct liability neither addresses nor supports OGA=s argument that an
expert report specifically criticizing its conduct was required.  Indeed, a
fair reading of Battaglia militates against requiring a separate expert
report.  If the legal consequences to the professional association are based
solely on the doctors= conduct, and no allegation is made that
the professional association itself is negligent in some way, then a separate
expert report addressing the professional association=s conduct would
appear to be unnecessary.  See id. at 902B03.








OGA=s reliance on Kettle is also
unavailing.  In that case, the plaintiffs sued a professional association and
others for alleged medical negligence following Raymond Kettle=s death after
being implanted with a cardiac pacemaker.  232 S.W.3d at 836.  The Kettles
filed one expert report from a cardiologist as to all of the defendant
physicians and the cardiologists= professional
association, and a separate expert report from a nurse as to the conduct of the
hospital nurses.  Id. at 837B42.  On appeal,
the court rejected the plaintiffs= assertion that
the expert-report requirement of article 4590i (the predecessor to chapter 74)
did not apply to the professional association because they alleged only
vicarious, not direct, liability against the association based on the conduct
of a Dr. Agrawal.  Id. at 842.  The court rejected this argument on the
grounds that the statute expressly required that an expert report be submitted
as to each health care provider.  Id.  The court also relied on the Battaglia
court=s discussion of an
association=s direct liability under the Professional Association
Act.  Id.  However, the court went on to state that Awhether [the
association=s] liability is considered direct or vicarious, that
liability still depends on conduct of Agrawal, to which [article 4590i]
indisputably applies.@  Id. at 842B43.  Because the
plaintiffs= expert report was deficient as to Agrawal, the court
ultimately held that the trial court did not err in dismissing the claims
against the association.  Id. at 843.  Thus, although the Kettle
court appears to conclude that an expert report is required whenever a
professional association is sued, it also recognizes that the liability of the
professional association depends on the conduct of the association=s physician, and
its holding is based on the inadequacy of the expert report as to that
physician.  Therefore, Kettle is not persuasive on the question before
us.








McCoy=s petitions alleged, under a section
entitled AVicarious Liability,@ that OGA was Avicariously liable
for the conduct of its employees, members, and/or agents (Defendants Gunn and
Jacobs) under the doctrine of respondeat superior and under the
statutory vicarious liability requirements provided in the Texas Professional
Association Act.@  It is evident that this claim is
directed to OGA=s liability based solely on the conduct of
Drs. Gunn and Jacobs; no direct-negligence theories distinct from the doctors= actions are
alleged.  When liability is alleged against a professional association based
solely on the actions of its principals, the question of the professional
association=s liability is based on a legal principle, not a
medical standard of care, and so no expert report is required.[3] 
See Hiner v. Gaspard, No. 09-07-240-CV, 2007 WL 2493471, at *5
(Tex. App.CBeaumont Sept. 6, 2007, pet. denied) (mem. op.)
(holding that no expert reports specifically addressing conduct of professional
corporation and professional association were required when plaintiffs alleged
only vicarious liability based on medical negligence of entities= physicians,
explaining that the entities= conduct Ais not measured by
a medical standard of care@ but rather their liability was solely
vicarious); In re CHCA Conroe, L.P., 09-04-453-CV, 2004 WL 2671863, at
*1 (Tex. App.CBeaumont Nov. 23, 2004, orig. proceeding) (mem. op.,
per curiam) (holding that expert report addressing hospital=s conduct was not
required when plaintiffs= sole theory against hospital was vicarious
liability based on ostensible agency and explaining that A[t]he conduct by
the hospital on which the agency relationship depends is not measured by a
medical standard of care.  These are principles of agency law on which no
expert report is required.@).

Here, McCoy seeks to hold OGA liable under a theory of
respondeat superior and statutory liability under the Texas Professional
Association Act based solely on the conduct of Drs. Jacobs and Gunn.  We
conclude that, on these facts, a separate expert report addressing OGA=s conduct is not
required under section 74.351 to support McCoy=s allegations.

b.         Alleged Liability for
Gross Negligence

Next, OGA contends that McCoy=s third amended
petition attempts to hold it liable for gross negligence, citing the following
language:  Athe evidence clearly and convincingly shows that
conduct of . . . [OGA] in this case constitutes >gross negligence.=@  According to
OGA, McCoy is alleging that OGA itself committed some conduct amounting to
gross negligence, and that the allegation is broad enough to leave the door
open for further allegations of direct liability against it.  See Azle
Manor, Inc. v. Vaden, No. 2-08-115-CV, 2008 WL 4831408, at *4 (Tex. App.CFort Worth Nov. 6,
2008, no pet.) (mem. op.) (holding that allegations that entity Aamong other things@ Afailed to act as
an ordinary prudent person would have under the same or similar circumstances@ was broad enough
to encompass a direct-liability claim and leave the door open for further allegations
of direct liability).








In Azle Manor, the expert report appellees provided
did not mention the Azle Manor nursing home, but did address the alleged
negligence of appellants= employees.  Id. at *5.  The court,
assuming the adequacy of the reports as to the employees, held that the report
was sufficient to satisfy the expert-report requirement for the
vicarious-liability claims against appellants.  Id.  However, the court
also held that the report was inadequate as to appellees= direct-liability
claims because it did not mention appellants and it failed to describe the
standards of care applicable to them directly or how they breached those
standards.  Id.

This case is distinguishable from Azle Manor. 
First, when McCoy=s allegations are reviewed in context, no
direct-liability claim is articulated against OGA, and nowhere does McCoy
allege that OGA breached any applicable standard of care rendering it liable
for gross negligence.  In the section entitled AGross Negligence@ McCoy alleges the
following:

The evidence clearly and convincingly shows that
conduct of Defendants Debra C. Gunn, M.D., Mark A. Jacobs, M.D., and
Obstetrical and Gynecological Associates, P.A. in this case constitutes Agross negligence@ as this term is defined in ' 41. 001(11) of [the] Civil
Practices and Remedies Code. . . .

. . . 

Defendants Debra
C. Gunn, M.D. and Mark A. Jacobs, M.D. were negligent and grossly negligent in
the care and treatment of Shannon Miles McCoy.  The negligence
and gross negligence of these Defendants was a proximate cause of
Plaintiff=s injuries and damages in this case.  Defendant
Obstetrical and Gynecological Associates, P.A. is jointly and severally
responsible for the grossly negligent conduct of Defendants Debra C. Gunn, M.D.
and Mark A. Jacobs, M.D.  According to the Texas Professional Association
Act, A[t]he association
is jointly and severally liable with the officer or employee furnishing
professional services for such professional errors, omission, negligence,
incompetence or malfeasance on the part of such officer or employee when such
officer or employee is in the course and scope of his employment for the
association.@  Tex. Rev.
Civ. Stat. Ann. Art 1528f, ' 24 (Vernon 2001).








(emphasis
added).  The plain language of the petition demonstrates that any
alleged gross negligence on the part of OGA is, again, based solely on the
conduct of Drs. Gunn and Jacobs.  Therefore, the Azle Manor court=s conclusion that
an expert report was required to address the appellants= allegedly
negligent conduct because the plaintiffs= allegation was
broad enough to encompass a claim of direct negligence against the appellants
does not apply in this case, because McCoy=s allegation that
OGA was grossly negligent is limited to OGA=s alleged
liability for the doctors= conduct.  

Even if one were to interpret the allegations broadly
enough to encompass some allegation of direct liability against OGA, McCoy has
repeatedly asserted throughout his briefing, and represented to this court at
oral argument, that he was alleging only claims of vicarious liability, and was
not alleging any claims of direct negligence against OGA.  Therefore, given
McCoy=s disclaimer of
any theory of direct negligence against OGA, and the language of the petition,
we conclude that McCoy=s allegation that OGA is liable for gross
negligence is based solely on the conduct of Drs. Gunn and Jacobs, and so no
expert report is required to address these allegations.  See In re
CHCA Conroe, L.P., 2004 WL 2671863, at *1 (AAlthough the
plaintiffs= petition could be read more broadly were it not for
an express abandonment of all other theories of liability, the sole theory of
liability applicable to the relators is a vicarious claim for the medical
malpractice of the doctors on the doctrine of ostensible agency.@). 

c.         Alleged Liability Under
Vice-Principal Theory and Ratification

OGA also contends that McCoy has asserted a
direct-liability claim against it based on vice-principal theory and an
allegation that OGA authorized or ratified the conduct of Drs. Jacobs and
Gunn.  McCoy=s allegations in the third amended petition in the
section entitled AVice Principal@ consist of the
following:








Defendants Debra
C. Gunn, M.D. and Mark A. Jacobs, M.D. are vice-principals of Defendant
Obstetrical and Gynecological Associates, P.A.  As vice-principals, Defendants
Debra C. Gunn, M.D. and Mark A. Jacobs, M.D. represent Defendant Obstetrical
and Gynecological Associates, P.A. in its corporate capacity.  When actions are
taken by a Avice-principal@ of a corporation,
those acts are deemed to be the act of the corporation itself.  Defendant
Obstetrical and Gynecological Associates, P.A. authorized and/or ratified the
conduct of Defendants Debra C. Gunn, M.D. and Mark A. Jacobs, M.D. in this
case, Defendants Debra C. Gunn, M.D. and Mark A. Jacobs, M.D. were employed by
Defendant Obstetrical and Gynecological Associates, P.A. in a managerial
capacity for Defendant Obstetrical and Gynecological Associates, P.A. at the
time of their conduct in this case, and both Defendants Debra C. Gunn, M.D. and
Mark A. Jacobs, M.D. were acting in the course and scope of their employment at
the time they cared for Shannon Miles McCoy in September 2004.

Again,
it is evident that McCoy=s allegations are directed to the conduct
of Drs. Jacobs and Gunn, and McCoy seeks to impose liability on OGA for their
conduct based on legal constructs or principals that make the actions of
certain individuals the actions of the entity itself.  

Here, McCoy alleges that Drs. Jacobs and Gunn are
vice-principals for purposes of imputing the doctors= alleged gross
negligence in caring for Shannon to OGA.  A corporation may be liable in
punitive damages for gross negligence only if the corporation itself commits
gross negligence.  Mobil Oil Corp. v. Ellender, 968 S.W.2d 917, 921
(Tex. 1998).  Because a corporation can act only through agents of some
character, the supreme court has developed tests for distinguishing between
acts that are solely attributable to agents or employees and acts that are
directly attributable to the corporation.  Id.  The supreme court has
determined that a corporation is liable for punitive damages if it authorizes
or ratifies an agent=s gross negligence or if it commits gross
negligence through the actions or inactions of a vice-principal.  Id. at
921B22.  A
vice-principal encompasses (1) corporate officers, (2) those who have authority
to employ, direct, and discharge servants of the master, (3) those engaged in
the performance of nondelegable or absolute duties of the master; and (4) those
to whom the master has confided the management of the whole or a department or
a division of the business.  Id. at 922 (citing Hammerly Oaks, Inc.
v. Edwards, 958 S.W.2d 387, 391 (Tex. 1997)).








McCoy=s allegations that OGA Aauthorized and/or
ratified@ the actions of
Drs. Jacobs and Gunn and that the doctors are OGA=s vice-principals
do not include any allegation that OGA itself engaged in any act of medical
negligence for which an expert report would be required.  Instead, McCoy
appears to be asserting that OGA Aauthorized and/or
ratified@ Drs. Jacobs and
Gunn=s conduct merely
because Drs. Jacobs and Gunn themselves are simultaneously vice-principals (the
ratifiers and authorizers of corporate conduct) and employees of OGA (whose
conduct the vice-principals Aratified and/or authorized@).[4] 
McCoy=s ratification and
authorization allegations, therefore, again amount to nothing more than claims
of vicarious liability.[5] 
Because McCoy=s reports as to Drs. Jacobs and Gunn sufficiently
address such vicarious-liability allegations, we again reject OGA=s assertion that
the trial court erred in denying its motion to dismiss McCoy=s claims.








OGA repeatedly asserts that McCoy=s allegations seek
to impose Adirect liability@ on OGA and that
consequently McCoy was required to provide an expert report specifically
addressing OGA=s conduct.  But OGA fails to recognize the distinction
between seeking to impose liability based on the entity=s own negligence
and seeking to impose Adirect@ liability on an
entity by imputing the actions of one or more individual to the entity. 
Because entities like professional associations and corporations can act only
through individuals, the legal constructs discussed above have been created to
distinguish a principal=s liability for its own acts as opposed to
a principal=s liability for the conduct of its employees or agents
under the doctrine of vicarious liability or respondeat superior.  See F.F.P.
Operating Partners, L.P. v. Duenez, 237 S.W.3d 680, 686 (Tex. 2007) (explaining
that generally, in Texas, the doctrine of vicarious liability, or respondeat
superior, makes a principal liable for the conduct of his employee or agent).  But,
the mere allegation of direct liability against an entity, absent any claim
that the entity itself was negligent, is not necessarily enough to impose the
requirement of an expert report on a plaintiff under chapter 74.  See
Tex. Civ. Prac. & Rem. Code Ann. '74.001(a)(13)
(Vernon 2005) (defining a health care liability claim as Aa cause of action
against a health care provider or physician for treatment, lack of treatment,
or other claimed departure from accepted standards of medical care, or health
care, or safety or professional or administrative services directly related to
health care, which proximately results in injury to or death of a claimant,
whether the claimant=s claim or cause of action sounds in tort
or contract.@).

A review of several cases involving complaints of direct
liability based on an entity=s own negligent conduct illustrates the
distinction.  For example, in University of Texas Medical Branch v.
Railsback, a plaintiff brought health care liability claims against UTMB,
alleging that (1) UTMB failed to monitor its physicians and employees and to
provide competent medical staff to ensure the plaintiff=s safety, and (2)
acting though various individuals, UTMB engaged in acts and omissions
constituting negligence, negligent supervision, and failure to properly train
its employees and staff physicians.  259 S.W.3d 860, 862 (Tex. App.CHouston [1st
Dist.] 2008, no pet.).  The plaintiff=s expert report
contained no mention of UTMB=s standard of care, breach of that
standard, or any causal relationship between that breach and the plaintiff=s injury.  Id.
at 866.  Accordingly, the court held that the trial court abused its discretion
in not granting UTMB=s motion to dismiss the plaintiff=s direct-liability
claims against it.  Id.  In Renaissance Surgical Centers-South Texas,
L.L.P. v. Jimenez, the plaintiffs alleged direct liability theories against
a surgical center and several related entities for improperly discharging the
patient and for negligent supervision.  No. 13-07-00121-CV, 2008 WL 3971096, at
*1 (Tex. App.CCorpus Christi Aug. 28, 2008, no pet.) (mem. op.).  In
an effort to satisfy the expert-report requirement as to these claims, the
plaintiffs provided two expert reports.  The court found that one of the expert
reports sufficiently addressed causation, but because it found the other expert
unqualified, it remanded in part to allow the trial court to consider whether
to grant a thirty-day extension to cure the deficient report.  Id. at
*10. 








In Center for Neurological Disorders, P.A. v. George,
the plaintiff alleged two direct-liability claims against CND, a professional
association:  (1) that CND failed to timely, properly, safely, or adequately
govern or supervise the quality of medical, surgical and health care services
to and for the patient; and (2) CND directly and through its employees or
agents engaged in acts or omissions departing from the applicable standard of
care.  261 S.W.3d at 294.  The expert=s report was held
to be insufficient as to the failure to supervise claim because the plaintiffs= expert report
discussed CND=s negligence only in the context of its provision of
medical services through its doctor.  Id.  The court noted that,
although the report clearly supported a claim for CND=s vicarious
liability for the doctor=s negligence, it failed to support a
separate standard of care applicable to a professional association of
neurosurgeons.  Id.  As to the other claim against CND, the court did
not address it because it found that CND did not raise any complaint below
about that claim.  Id. at 295.  

In each of these cases, plaintiffs alleged direct-liability
claims asserting medical negligence or the breach of a standard of care against
the defendant entity as an entity.  The courts then determined whether
the statutory expert-report requirements of standard of care, breach, and
causation were satisfied as to the direct-liability claims alleged.  In contrast,
McCoy has alleged no such claims against OGA; all of its claims are based on
OGA=s vicarious or
direct liability for the actions of Drs. Jacobs and Gunn based on legal
principles for which no expert report is required.  Therefore, on the facts of
this case, we conclude that the trial court did not abuse its discretion by not
granting OGA=s motion to dismiss.  We therefore overrule OGA=s issue.

Conclusion

We
affirm the trial court=s order denying OGA=s motion to dismiss.

 

 

/s/        Jeffrey V. Brown

Justice

 

Panel consists of Justices Brown,
Boyce, and Sullivan.









[1]  The current version of section 74.351(a) requires
that a claimant serve an expert report in a health care liability claim not
later than the 120th day after the date that Athe original petition is filed.@  See
Tex. Civ. Prac. & Rem. Code Ann. '
74.351(a).  However, the current version does not apply to this case, because
McCoy=s cause of action accrued before the effective date of
the amendment.  See Act of May 18, 2005, 79th Leg., ch. 635, ' 2, 2005 Tex. Gen. Laws 1590, 1590 (providing that
2005 amendment of section 74.351(a) applies only to causes of action that
accrued on or after the amendment=s
effective date of September 1, 2005).  We will refer to the applicable version
as Aformer section 74.351(a).@





[2]  In its appellate brief, OGA argues that professional
associations are distinct from other types of entities such as hospitals, which
may be liable for the conduct of their employees, see, e.g., Dale, 188
S.W.3d at 879, and contends that the distinction between liability for
physician-employees and physician-principals is Aan important one.@  OGA argues that, although a professional association
may be liable generally for an act of its employee-physician because it has the
right to control the physician-employee, it is possible for a
physician-principal to act outside the scope of its employment as a principal
of the professional association.  See Battaglia v. Alexander, 177 S.W.3d
893, 901 (Tex. 2005) (AWhile a professional association with a single
principal can act only through that person, the person can act outside the scope
of his employment as principal of the association.@).  Thus, OGA continues, the conduct of the
physician-principal does not necessarily implicate the conduct of the
professional association.  However, OGA fails to explain how this distinction
applies to this case other than to distinguish this case from Dale. 
Further, OGA did not argue below that the doctors were not acting in the course
and scope of their employment.  Therefore, we express no opinion on this
argument.





[3]  We note, however, that in certain cases involving
complex interrelationships between corporations, professional associations, or
other types of entities, a report prepared by an expert in corporate law may be
helpful to the medical experts and the court, and may be considered as a Agood cause@
exception to the general rules concerning expert reports under Chapter 74.  See
Packard v. Guerra, 252 S.W.3d 511, 528B533
(Tex. App.CHouston 2008, pet. denied) (holding that trial court
did not abuse its discretion in considering expert report prepared by
non-physician corporate lawyer to Aconnect
the dots@ among the business relationships of defendant
entities and doctors acting in their corporate capacities).  But this is not
such a case.  Further, we note that in Packard, the plaintiffs alleged
that, among other things, the corporations, partnerships, and director/officer
physicians were vicariously and directly liable for injuries suffered by the
plaintiffs= daughter during delivery because they breached their
duties to staff, supervise, and provide medical care to patients in the
emergency department of the hospital.  Id. at 514.  McCoy makes no such
allegations here.





[4]  If McCoy had truly pleaded an independent act by the
professional association that constituted ratification, another expert report
would have been required.  See Ctr. for Neurological Disorders, P.A. v.
George, 261 S.W.3d at 294 (stating that plaintiffs who alleged professional
association was directly liable for failing to supervise the provision of
health care services were Arequired to
provide an expert report on this claim or face having the claim dismissed with
prejudice@ and holding that plaintiffs= expert report, which addressed only the conduct of
the doctor employed by the professional association, failed to establish a
separate standard of care applicable to the professional association).





[5]  This comports with McCoy=s counsel=s
admission in oral argument before this court that McCoy was not asserting any
claims of Adirect liability@
against OGA.