**UNIVERSITY OF TEXAS MEDICAL BRANCH, Appellant,**

v.

**Lynda RAILSBACK, Appellee.**

No. 01–07–00729–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 17, 2008.

Elsa Giron Nava, Asst. Atty. Gen., Tort Litigation Div., Austin, for Appellant.

Stephen R. Lewis, Jr., Lewis & Williams, L.L.P., Galveston, Jana K. Landry, Webster, for Appellee.

Panel consists of Chief Justice RADACK, and Justices JENNINGS and BLAND.

## OPINION

TERRY JENNINGS, Justice.

In this interlocutory appeal,[1] appellant, the University of Texas Medical Branch ("UTMB"), challenges the trial court's August 2, 2007 order denying its motion to dismiss the health care liability claims made against UTMB by appellee, Lynda Railsback.[2] In its sole issue, UTMB contends that the trial court erred in not dismissing Railsback's health care liability claims on the ground that her submitted "expert report was [deficient] and did not represent a good faith effort to comply with" section 74.351 of the Texas Civil Practice and Remedies Code.[3]

We affirm in part and reverse and render in part.

### Procedural Background

In her first amended original petition, filed on February 27, 2007, Railsback sued UTMB, Dr. Frank M. Ivey, Jr., and Dr. Seth Maxwell,[4] alleging that, when conducting surgery on her right knee, "Railsback underwent a tibial tubercle elevation in which a tourniquet was placed on her extremity prior to the beginning of the surgery," causing her, through their negligence, to suffer nerve damage in her right foot. Railsback specifically alleged that UTMB was negligent in (1) "failing to monitor its physicians and employees and to provide competent medical staff to ensure [Railsback's] safety," and (2) "acting through [its] board of trustees, hospital committees, staff physicians, administrative personnel, agents, ostensible agents, agents by estoppel, and employees, engaged in ... acts and omissions, ... constituting negligence, negligent supervision[,] and failure to properly train [its] employees and staff physicians in the proper technique and positioning of a tourniquet." Railsback further alleged that UTMB was vicariously liable for the "acts and omissions of [its] employees and agents."

On June 21, 2007, Railsback provided UTMB with the expert report[5] of Dr. James A. Ghadially, M.D. On July 11, 2007, UTMB filed its "Objections to Plaintiff's Expert Report and CV and Motion to Dismiss." UTMB objected to Dr. Ghadially's report as deficient and requested a "dismissal" of Railsback's claims.[6] Railsback filed a response, and, on August 2, 2007, the trial court entered a written order denying UTMB's "[o]bjections." Subsequently, on August 24, 2007, UTMB filed its notice of appeal, challenging the trial court's interlocutory order.

---

1. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(9) (Vernon Supp.2007).

2. *See id.* § 74.351 (Vernon Supp.2007). Before September 1, 2005, section 74.351(a) required that a plaintiff, within 120 days of filing a health care liability claim, serve on each defendant an expert report, along with the expert's curriculum vitae. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875, *amended by* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1–3, 2005 Tex. Gen. Laws 1590, 1590. Section 74.351(a) has been amended since Railsback's health care liability claim accrued.

*See id.* (providing that amendment took effect September 1, 2005). However, which version of the statute applies does not affect our analysis, and we therefore cite to the current version of the statute.

3. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.315(b), (*l*), (r)(6).

4. Drs. Ivey and Maxwell are not parties to this appeal.

5. *See id.* § 74.351(a).

6. *See id.* § 74.351(b), (*l*), (r)(6).

## Expert Report

In its sole issue, UTMB argues that the trial court erred in denying UTMB's motion to dismiss because Dr. Ghadially's expert report does not "discuss each of [the three] elements with sufficient specificity [under Texas Civil Practice and Remedies Code section 74.351(r)(6)] to inform UTMB of the conduct that Railsback has called into question [or] provide a basis for the trial court to conclude that the claims have merit."[7] UTMB asserts that the cause must be dismissed as it "does not represent an objective good faith effort" to comply with Texas Civil Practice and Remedies Code section 74.351(l).[8]

■ We review a trial court's decision on a section 74.351(b) motion to dismiss for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 875 (Tex.2001) (citing predecessor statute); *Gray v. CHCA Bayshore L.P.,* 189 S.W.3d 855, 858 (Tex.App.-Houston [1st Dist.] 2006, no pet.). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *See Garcia v. Martinez,* 988 S.W.2d 219, 222 (Tex.1999). When reviewing matters committed to the trial court's discretion, we may not substitute our own judgment for that of the trial court. *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex.2002). A trial court does not abuse its discretion merely because it decides a discretionary matter differently than an appellate court would in a similar circumstance. *Gray,* 189 S.W.3d at 858. However, a trial court has no discretion in determining what the law is or in applying the law to the facts. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992); *Baylor Univ. Med. Ctr. v. Biggs,* 237 S.W.3d 909, 916 (Tex. App.-Dallas 2007, pet. filed).

Here, the issue is whether Dr. Ghadially's report represents an objective good faith effort to comply with the statutory definition of an expert report. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(l) (Vernon Supp.2007); *Palacios,* 46 S.W.3d at 878. The definition requires "a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care," "the manner in which the care rendered by the physician or health care provider failed to meet the standards," and "the causal relationship between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM.CODE ANN. 74.351(r)(6) (Vernon Supp. 2007). If a plaintiff timely files an expert report and the defendant moves to dismiss because of the report's inadequacy, a trial court must grant the motion "only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." *Id.* § 74.351(l).

■ The only information relevant to our inquiry is within the four corners of the report. *Palacios,* 46 S.W.3d at 878. A report need not marshal all the plaintiff's proof, but it must include the expert's opinion on each of the elements identified in the statute. *Id.* In setting out the expert's opinions on each of those elements, the report must provide enough information to fulfill two purposes to constitute a good faith effort. *Id.* at 879. First, the report must inform the defendant of the specific conduct that the plaintiff has called into question. *Id.* Second, and equally important, the report must provide a basis for the trial court to conclude that the claims have merit. *Id.*

---

7. *See id.* § 74.351(l), (r)(6).

8. *See id.* § 74.351(b), (l), (r)(6).

A report that merely states the expert's conclusions about the standard of care, breach, and causation does not fulfill these two purposes. *Id.* Rather, the expert, in his report, must explain the basis of his statements to link his conclusions to the facts. *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex.2002). Also, a report cannot meet these purposes and constitute a good faith effort if it omits any of the statutory requirements. *Jernigan v. Langley,* 195 S.W.3d 91, 94 (Tex.2006) (per curiam). However, to avoid dismissal, a plaintiff need not present evidence in the report as if it were actually litigating the merits. *Palacios,* 46 S.W.3d at 879. The report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary judgment proceeding at trial. *Id.*

Identifying the standard of care is critical: whether a defendant breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently. *Id.* at 880. While a "fair summary" is something less than a full statement of the applicable standard of care and how it was breached, even a fair summary must set out what care was expected, but not given. *Id.*

When a plaintiff sues more than one defendant, the expert report must set forth the standard of care for each defendant and explain the causal relationship between each defendant's individual acts and the injury, i.e., "[c]ollective assertions of negligence against various defendants are inadequate." *Taylor v. Christus Spohn Health Sys. Corp.,* 169 S.W.3d 241, 244 (Tex.App.-Corpus Christi 2004, no pet.); *see CHCA Mainland L.P. v. Burkhalter,* 227 S.W.3d 221, 227 (Tex.App.-Houston [1st Dist.] 2007, no pet.). This includes a hospital if a plaintiff is alleging that the hospital itself was directly negli-

gent, rather than just alleging that the hospital was liable due to vicarious liability. *Biggs,* 237 S.W.3d at 912, 919 (Tex. App.-Dallas 2007, pet. filed) (finding that reports did not satisfy required elements of expert report when hospital sued for malpractice); *Burkhalter,* 227 S.W.3d at 224, 227 (holding that report did not satisfy required elements of expert report when hospital sued for negligence); *but see Univ. of Tex. Sw. Med. Ctr. v. Dale,* 188 S.W.3d 877, 879 (Tex.App.-Dallas 2006, no pet) (concluding that plaintiffs need not mention hospital in expert report when plaintiffs limited their claim against hospital to vicarious liability for employees).

### UTMB's Vicarious Liability Based on the Acts and Omissions of Dr. Maxwell and Direct Liability

UTMB first argues, essentially, that Railsback did not serve any expert report at all as to UTMB's vicarious liability based on the acts and omissions of Dr. Maxwell because it does not detail Dr. Maxwell's "appropriate standard of care[,] how that standard of care was breached[,] or how the breach caused injury." UTMB also argues, essentially, that Railsback did not serve any expert report at all as to UTMB's direct liability because "it makes no mention of UTMB's standard of care, how [UTMB] breached each standard of care[,] or a causal relationship between the alleged breach and any alleged injury."

In her petition, Railsback alleges that UTMB is vicariously liable for Dr. Maxwell's "negligent" acts. Railsback also alleges in her petition that UTMB is directly liable for "failing to monitor its physicians ... and to provide competent medical staff," "negligent supervision," and "failure to properly train" its "employees and staff physicians."

Limiting our analysis to the four corners of Dr. Ghadially's expert report, Dr. Gha-

dially only mentions Dr. Maxwell once: "Medical records operative report on 03/14/2005 from Dr. Seth C. Maxwell and Dr. Frank Ivey." Also, other than stating that he reviewed UTMB's records, Dr. Ghadially only mentions UTMB twice in his report. The first reference occurs in a header, which states, "Damages Proximately Caused by … UTMB … Operating Room Person[n]el's Breach of the Applicable Standard of Care." The second reference occurs directly underneath that header, which asserts, "Railsback has been damaged as a proximate cause of the above breaches in the standard of care by Dr. Frank Ivey and UTMB."

The only standards of care, breach of those standards, and causal relationship between that breach and the injury asserted by Dr. Ghadially in his report concern "Dr. Frank Ivey" and, collectively, UTMB's "nurses." Except in regard to Dr. Ivey, the report contains no mention of Dr. Maxwell's or any other doctor's standard of care, breach of that standard, or causal relationship between that breach and the injury. Nor does the report contain any mention of UTMB's standard of care, breach of that standard, and causal relationship between that breach and the injury.

■ Section 74.351(a) provides that a plaintiff shall serve an expert report no later than the 120th day after the plaintiff has filed her original petition, unless the parties agree, in writing, to extend the deadline. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp.2007). Under section 74.351, a plaintiff has not served an expert report if: (1) she has not provided any expert report within 120 days, or (2) she has provided an expert report, but she has provided a "deficient report." See id. § 73.351(a)-(c) (Vernon Supp.2007); Garcia v. Marichalar, 185 S.W.3d 70, 73 (Tex. App.-San Antonio 2005, no pet.). In the first situation, a trial court must dismiss the plaintiff's claim with prejudice because either she did not provide any expert report whatsoever or she purports to provide an expert report as to a party but, the purported expert report is no expert report as to that party, leaving the trial court with "no discretion" but to dismiss. Jernigan, 195 S.W.3d at 94; see TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a)-(c); Austin Heart, P.A. v. Webb, 228 S.W.3d 276, 283–84 (Tex.App.-Austin 2007, no pet.); Garcia, 185 S.W.3d at 73–74. When a purported expert report is no report at all as to a particular party, a trial court cannot grant an extension to cure because the attempt to cure the report "would, in effect, [be] to create and serve new reports" and "is conceptually no different from the situation where a plaintiff simply missed the deadline for serving a report." Webb, 228 S.W.3d at 283–84. In the second situation, when a plaintiff's report is "deficient," a trial court may either dismiss the case or grant the plaintiff one extension to cure the report, and if, after the extension, the trial court determines that the report is deficient, then the trial court must dismiss the case because the plaintiff has not "served" an expert report. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a)-(c); Garcia, 185 S.W.3d at 73.

In Garcia, where the plaintiff specifically listed the physician as a defendant in her petition, the court of appeals held that the plaintiff did not timely serve her expert report because the report contained no reference whatsoever to the physician. 185 S.W.3d at 72, 74. In Jernigan, the Texas Supreme Court held that, because the plaintiff's "expert reports omit[ted] at least one of the three specifically enumerated requirements" for an expert report as to the defendant, a physician, the trial court had "no discretion" but to dismiss the plaintiff's claims. 195 S.W.3d at 94.

Here, in his report, except in regard to Dr. Ivey, Dr. Ghadially makes no references to any other doctor's standard of care, breach of that standard, or causal relationship between that breach and the injury. Although Railsback, in her petition, specifically alleges that UTMB was directly negligent, Dr. Ghadially, in his report, makes no references to UTMB's standard of care, breach of that standard, or causal relationship between that breach and the injury. Thus, Dr. Ghadially, in his expert report, does not discuss UTMB's vicarious liability based on Dr. Maxwell's acts and omissions or UTMB's direct liability with "sufficient specificity" in order to inform UTMB of either "the conduct" which Railsback "has called into question" or to allow the trial court, and UTMB, to determine whether her allegations have merit. *See id.* at 93–94; *Burkhalter*, 227 S.W.3d at 227. Accordingly, we hold that the trial court abused its discretion in not granting UTMB's motion to dismiss Railsback's claims against UTMB for vicarious liability based on the acts and omissions of Dr. Maxwell and UTMB's direct liability. *See* TEX. CIV. PRAC. & REM.CODE ANN. 74.351(b).

### UTMB's Vicarious Liability Based on the Acts and Omissions of Dr. Ivey and UTMB's Nursing Staff

UTMB argues that Railsback served a deficient expert report as to UTMB's vicarious liability based on the acts and omissions of Dr. Ivey and UTMB's nursing staff because "Railsback's expert report was insufficient and did not represent a good faith effort to comply with" section 74.351.

Within the four corners of his report, Dr. Ghadially stated the following about Dr. Ivey's and the nursing staff's standards of care:

Once embarked upon the surgical intervention, the applicable standard of care as to [Dr.] Frank Ivey in the treatment of Lynda Railsback is to take care not to injure nerves during the surgical procedure from the tourniquet.

The applicable standard of care as to Dr. Frank Ivey in the treatment of Lynda Railsback requires that care be taken that the tourniquet be properly padded and maintained during the surgical procedure.

The applicable standard of care as to Dr. Frank Ivey in the treatment of Lynda Railsback requires that care be taken that the patient's peroneal nerve be carefully padded and protected at all times.

The applicable standard of care as to the operating room nursing staff in the treatment of Lynda Railsback requires that care be taken that the tourniquet be properly padded and maintained during the surgical procedure.

The applicable standard of care as to the operating room nursing staff in the treatment of Lynda Railsback requires that care be taken that the patient[']s peroneal nerve be carefully padded and protected at all times.

Dr. Ghadially also stated the following about Dr. Ivey's and the nursing staff's breach of the standards of care:

Dr. Frank Ivey [d]eviated from the applicable standard of care in the treatment of Lynda Railsback by injuring nerves during the surgical procedure from the tourniquet.

Dr. Frank Ivey deviated from the standard of care in the treatment of Lynda Railsback by not carefully maintaining the tourniquet during the surgical procedure.

Dr. Frank Ivey deviated from the standard of care in the treatment of Lynda Railsback by not carefully protecting the peroneal nerve at all times.

The operating room nursing staff deviated from the standard of care in the treatment of Lynda Railsback by not

taking care that the tourniquet be properly padded and maintained during the surgical procedure.

The operating room nursing staff [deviated from the standard of care] in the treatment of Lynda Railsback by not taking care that the patient[']s[ ] peroneal nerve be carefully padded and protected at all times.

Dr. Ghadially further stated the following about the causal relationship between Dr. Ivey's and the nursing staff's breach of the standards of care and the injury:

Lynda Railsback suffered injury to her nerve either as a result of the tourniquet, improper tourniquet installation and padding, direct injury through negligent surgical technique or improper care, maintenance and use of the tourniquet or a combination of the above.

Having embarked on such a course, the new neurological complaints and postoperative problems are a proximate result of the failure of Dr. Frank Ivey to competently and carefully perform the operative procedure.

Having embarked on such a course, the new neurological complaints and postoperative problems are a proximate result of the failure of the operating room nurses to take care that the tourniquet be properly padded and maintained during the surgical procedure.

Dr. Ghadially additionally stated the following, in a separate header, entitled, "Facts Supporting the Opinions Herein":

My opinions in this matter are supported by the factual evidence in the medical records and my 28 years of experience as a practicing [o]rthop[e]dic surgeon, as well as my knowledge of the evidence-based peer reviewed literature. In particular, including[,] but not limited to[,] the following[:]

a) Medical records of Dr. Christopher Wey post-operatively (05/23/2006) indicating "who has sustained a partial sciatic nerve palsy on the left related to the surgery[.]"

b) Medical records of Dr. Chad S. Conner and Dr. Frank Ivey p[o]st-operatively on 06/01/2005 from "[s]tatus[,] post right tibial tubercule elevation approximately two months out with tibial and peroneal nerve neuropathy[.]"

c) The nursing notes, "R foot numb[.]"

Medical records operative report on 03/14/2005 from Dr. Seth C. Maxwell and Dr. Frank Ivey, "Discussed with the patient the possibility of neurovascular damage during her surgery and possible damage when the tourniquet was put in place."

UTMB argues that Dr. Ghadially's expert report is inadequate because it "does not name the nurses that the expert accuses of breaching some unknown standard of care," and it refers us to *Norris v. Tenet Houston Health Sys.*, No. 14–04–01029–CV, 2006 WL 1459958 (Tex.App.-Houston [14th Dist.] May 30, 2006, no pet.) (mem. op.).

■ In *Norris,* the Fourteenth Court of Appeals concluded that a plaintiff's expert report was inadequate because the plaintiff named three nurses as defendants, and, in the report, the plaintiff's expert referred to the nurses collectively, instead of explaining how each nurse satisfied the requirements of section 74.351(r)(6). *Id.* at *1, 3–4; see* TEX. CIV. PRAC. & REM.CODE ANN. 74.351(r)(6). It is true that a good faith effort to comply with the statutory definition of an expert report "requires, *as to each defendant,* a fair summary of the expert's opinions about the applicable standard of care, the manner in which the care failed to meet that standard, and the causal relationship between that failure and the claimed injury." *Palacios,* 46 S.W.3d at 878 (emphasis added). Here, however, Railsback has not sued any nurse as a defendant. Moreover, other courts of ap-

peals have found adequate expert reports in cases where a plaintiff has sued a hospital only and referred to its nurses collectively in order to establish the hospital's vicarious liability. *Kettle v. Baylor Med. Ctr. at Garland,* 232 S.W.3d 832, 841 (Tex. App.-Dallas 2007, pet. denied); *Tovar v. Methodist Healthcare Sys. of San Antonio, Ltd.,* 185 S.W.3d 65, 70 (Tex. App.-San Antonio 2005, pet. denied). Accordingly, we hold that the trial court did not abuse its discretion in overruling UTMB's motion to dismiss Railsback's claim on this asserted ground.

UTMB also argues that Dr. Ghadially's expert report is inadequate because "[t]he report does not differentiate between the doctors, nurses[,] or staff and the complained of acts or omission[s]," noting that "[t]here are no details that articulate how ... the doctors, nurses[,] or staff breached a standard of care applicable to them." UTMB further argues that Dr. Ghadially's expert report is inadequate because the report "does not [specifically] detail what Dr. Ivey did to assess Railsback and what he should have done but failed to do."

Regarding Dr. Ivey's and the nursing staff's standards of care and breach of these standards, Dr. Ghadially, in his report, had to provide not just that Dr. Ivey and the nursing staff breached their applicable standard of care during Railsback's surgery, but "what care was expected, but not given." *Palacios,* 46 S.W.3d at 880. Dr. Ghadially stated that Dr. Ivey and the nursing staff should have carefully maintained the tourniquet during surgery, carefully protected the peroneal nerve during surgery at all times, and taken care that the tourniquet be properly padded and maintained during surgery. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(*l*). Specifically, Dr. Ghadially, in his report, provides a fair summary of how Dr. Ivey and the nursing staff should have prevented Railsback's injury with proper padding and maintenance of the tourniquet. *See Tovar,* 185 S.W.3d at 68 (concluding that expert report sufficiently stated what "nurses should have, but did not, do" when nurses' applicable standard of care was to transfer patient to appropriate setting and inform physician of status and report noted that nurses breached that standard by "fail[ing] to perform these critical functions").

Regarding the causal relationship between Dr. Ivey's and the nursing staff's breach of the standards of care and Railsback's injury, Dr. Ghadially's report had to "explain the bases of the statements and link his ... conclusions to the facts" by showing "causation beyond mere conjecture." *Longino v. Crosswhite,* 183 S.W.3d 913, 918 (Tex.App.-Texarkana 2006, no pet.). Dr. Ghadially's report only had to provide a "fair summary" of his expert opinion. *See* TEX. CIV. PRAC. & REM.CODE ANN. 74.351(*l*), (r)(6). Although not ideally included under proximate causation in his report, Dr. Ghadially references medical records which state that, at some point before or after the surgery, Dr. Ivey discussed with Railsback the possibility of "neurovascular damage during her surgery and possible damage when the tourniquet was put in place."[9] Dr. Ghadially also references Dr. Christopher Wey's post-operative medical records which revealed that Railsback suffered a "partial sciatic nerve palsy on the left related to surgery."[10] Dr. Ghadially further references

---

9. "Neurovascular" is defined as "relating to the nerves supplying the walls of the blood vessels." STEDMAN'S MEDICAL DICTIONARY 1214 (27th ed.2000).

10. "Sciatic" is defined as "pertaining to an area near the ischium, such as the sciatic nerve or the sciatic vein." MOSBY'S MEDICAL DICTIONARY 1543 (6th ed.2003). "Ischium" is defined as "one of the three parts of the hip bone." *Id.* at 933. "Palsy" is defined as "an abnormal condition characterized by paralysis." *Id.* at 1267.

Dr. Chad S. Conner's and Dr. Ivey's post-operative medical records, which stated that Railsback suffered "tibial and peroneal nerve neuropathy." [11] Dr. Ghadially additionally references the nursing staff's notes, which opined, "R foot numb." Dr. Ghadially links his conclusion regarding Dr. Ivey's and the nursing staff's alleged breach of the standards of care with his conclusion that Railsback's injury would not have occurred but for Dr. Ivey's and the nursing staff's failure to maintain and properly pad the tourniquet. *See Konen v. Bass,* 231 S.W.3d 554, 559 (Tex.App.-Dallas 2007, no pet.) (finding that trial court did not abuse its discretion in concluding that causation element was satisfied when expert report stated that, but for physician's improper placement of battery pack, plaintiff would not have suffered nerve damage). Specifically, Dr. Ghadially, by referencing the physicians' medical records and the nursing staff's notes, properly sets out the manner in which the alleged failure to properly maintain and pad the tourniquet resulted in Railsback's injury.

In *Gray,* we held that, given "the conclusory, and at times inconsistent, statements with [a doctor's] expert report, we [could not] conclude that the trial court abused its discretion in granting [a hospital's and doctor's] motion[s] for dismissal." 189 S.W.3d at 860. We noted that the report, which contained "only a general statement that [the defendants] failed to monitor [the plaintiff's] left knee properly," did not contain "specific information about what the defendant[s] should have done differently." *Id.* at 859. Also, we opined that, although "it is possible that an identical standard of care regarding limb monitoring during and

after surgery attaches to an anesthesiologist ... and a perioperative nursing staff ..., such generic statements, without more, can reasonably be deemed conclusory." *Id.* This, of course, is not always so.

In the instant case, Dr. Ghadially notes in his report that both Dr. Ivey and the nursing staff had a duty to make sure that the tourniquet in question "be properly padded and maintained during the surgical procedure" and that Railsback's "peroneal nerve be carefully padded and protected at all times." He also notes that both Dr. Ivey and the nursing staff deviated from these standards of care, resulting in Railsback's injury.

Unlike the expert report in *Gray,* Dr. Ghadially, as to UTMB's vicarious liability based on the acts and omissions of Dr. Ivey and the nursing staff, provides in his expert report an objective good faith effort to satisfy the two purposes of section 74.351.[12] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (Vernon Supp.2007). Dr. Ghadially informed UTMB of its vicarious liability by the failure of both Dr. Ivey and the nursing staff to properly maintain and pad the tourniquet and make sure that Railsback's peroneal nerve was carefully padded and protected. *See Palacios,* 46 S.W.3d at 879. Dr. Ghadially also provided a basis for the trial court to have concluded that Railsback's claims may have merit, especially in light of the doctors' records and nursing staff's notes, which stated that Railsback suffered the possibility of damaged nerves, paralysis, degeneration or inflammation of her peripheral nerve, and which alluded to a numb right foot. *See id.*

11. "Tibial" is defined as "pertaining to the largest long bone of the lower leg." *Id.* at 1713. "Peroneal" is defined as "pertaining to the outer part of the leg, over the fibula and the peroneal nerve." *Id.* at 1322. "Neuropathy" is defined as "inflammation or degenera-

tion of the peripheral nerves, such as that associated with lead poisoning." *Id.* at 1177.

12. Moreover, here, unlike in *Gray,* we review, under an abuse of discretion standard, the trial court's ruling to *deny* UTMB's motion to dismiss.

Accordingly, we hold that the trial court did not err in denying UTMB's motion to dismiss Railsback's health care liability claims as to UTMB's potential vicarious liability based on the acts and omissions of Dr. Ivey and UTMB's nursing staff.

We sustain in part and overrule in part UTMB's sole issue.[13]

## Conclusion

We affirm the portion of the trial court's order denying UTMB's motion to dismiss Railsback's health care liability claims as to UTMB's vicarious liability based on the acts and omissions of Dr. Ivey and UTMB's nursing staff.[14] We reverse the portion of the trial court's order denying UTMB's motion to dismiss Railsback's health care liability claims as to UTMB's vicarious liability based on both the acts and omissions of Dr. Maxwell and UTMB's direct liability, and we render judgment dismissing with prejudice those claims against UTMB.

---

**13.** Having held that Railsback filed no expert at all as to UTMB's vicarious liability based on both the acts and omissions of Dr. Maxwell and UTMB's direct liability and, also, having held that the trial court did not err in denying UTMB's motion to dismiss as to UTMB's potential vicarious liability based on Dr. Ivey and its nursing staff, we need not address Railsback's cross-issue, in which she requests a thirty-day extension in order to cure any deficiencies in her expert report. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(c);

*Jernigan v. Langley*, 195 S.W.3d 91, 94 (Tex. 2006) (per curiam).

**14.** Because Railsback did timely serve an expert report in regard to a portion of her claims, we need not address UTMB's request for attorney's fees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b) (stating that, if "expert report has not been served within the period specified by [s]ubsection (a), the court, on the motion of . . . health care provider, shall . . . award[ ] . . . reasonable attorney's fees").