Opinion issued July 16, 2009












In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00983-CV




CHRISTOPHER LOCKHART, M.D., Appellant

V.

NORMELL W. GUYDEN, INDIVIDUALLY AND AS HEIR TO THE
ESTATE OF NATALIE J. GUYDEN, DECEASED, Appellee




On Appeal from the 113th District Court
Harris County, Texas
Trial Court Cause No. 2008-034015




MEMORANDUM OPINION
          The issue in this interlocutory appeal is whether the trial court abused its
discretion by denying a doctor’s motion to dismiss health-care-liability claims. 
Appellant Christopher Lockhart, M.D. moved to dismiss appellee Normell W.
Guyden’s medical-malpractice and wrongful-death claims on the ground that Guyden
did not file a sufficient expert report.


 See Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351(a), (l) (Vernon Supp. 2008). The trial court denied the motion to dismiss. 
We reverse.
          For the purposes of reviewing the sufficiency of the expert report, the relevant
facts as stated in the report are that the patient, Natalie Guyden, was taken to a
hospital in Denton, Texas after she nearly drowned. Natalie was treated at the
hospital for acute respiratory and renal failure, pneumonia, diabetes mellitus, and
anoxic encephalopathy. After almost two months in the hospital, Natalie’s condition
generally improved; however, she developed a urinary tract infection (UTI).
          Notwithstanding the infection, on June 15, 2006, Natalie was transferred by
ambulance to a long-term-care facility in Houston. She arrived at Courtyard
Convalescent Center at approximately noon on June 15. By 10:30 pm., her fever was
101.2○ and there was blood in her urine. By midnight, her temperature rose to 102.8○,
which rose further by 1:30 a.m. on June 16 to 103.7○. The nursing notes indicated
that Dr. Lockhart’s answering service was called at that time and again at 2:50 a.m.
concerning Natalie’s temperature.
          The nursing notes for 4:00 a.m. further indicated that Dr. Lockhart could not
be contacted. Natalie refused to eat her breakfast and lunch, and when her family
arrived around 12:15 p.m., Natalie’s mother said Natalie “didn’t look right.” Natalie
was not breathing, and the staff began cardiopulmonary resuscitation. Paramedics
were called, and they arrived at 1:25 p.m. The paramedics pronounced Natalie dead
at 1:30 p.m. Dr. Lockhart signed the death certificate, which listed the cause of death
as urosepsis.
          The relevant portion of the expert report follows:
The standards of medical care applicable under the circumstances
beginning on or around the hours of 0130 on June 16, 2006 dictate that
a physician has the duty to timely respond to an “after-office-hours”
page because it may be a result of an acute deterioration of his long-term
care hospitalized patient’s condition. The standards of care applicable
under the circumstances beginning on or around the hours of 0200 on
June 16, 2006 dictate that a physician has the duty to timely evaluate
and treat his long term care hospitalized patient for sepsis. The
standards of medical care applicable under the circumstances beginning
on or around the hours of 0230 on June 16, 2006 dictate that a physician
has the duty to timely transfer his long term care hospitalized patient for
the treatment of urosepsis.
The standards of medical care applicable under the circumstances,
including the fact that as an accepting physician Dr. Lockhart knew or
should have known that Natalie Guyden had a UTI beginning on or
around the hours of 0130 on June 16, 2006 when paged by the Center’s
staff dictate that Dr. Lockhart had the duty to timely respond within
approximately 30 minutes in order to evaluate and treat the acute
deterioration of the patient’s condition. The standards of medical care
applicable under the circumstances beginning on or around the hours of
0200 on June 16, 2006 dictate that Dr. Lockhart had the duty to evaluate
and treat Natalie for sepsis. The standards of medical care applicable
under the circumstances beginning on or around the hours of 0230 on
June 16, 2006 dictate that Dr. Lockhart had the duty to consider timely
transfer Natalie to an acute care facility for the treatment of urosepsis.
In contrast, the medical records document that Dr. Lockhart did
not timely respond to the page by the Center’s staff. There is no
evidence that he responded to any of the calls made to him by the staff
at the Center on June 16, 2006. Consequently Dr. Lockhart did not
timely evaluate and treat Natalie for sepsis nor timely transfer Natalie to
an acute care facility. Thus, it is my medical professional opinion that
Dr. Lockhart’s medical care with respect to the treatment of Natalie’s
UTI represents medical negligence.
Furthermore based on my qualifications discussed above and in
my CV, the medical science discussed in the “general section” above,
the medical facts summarized above, that but for the negligence of Dr.
Lockhart as set forth in this section, Natalie Guyden would not have
suffered from and died from progressive urosepsis. That is, more likely
than not had Dr. Lockhart timely and appropriately responded to the
multiple pages allegedly made by the nursing staff at the Center after
Natalie Guyden’s condition had acutely changed in the early morning
hours of June 16, 2006, the patient would have been transferred in a
timely manner to an acute care facility for the appropriate and indicated
treatment of her urosepsis as detailed above in the “General” section and
elsewhere. Consequently, Natalie Guyden would not have died from
urosepsis. Thus, it is my professional opinion to a reasonable degree of
medical probability that Dr. Lockhart’s negligent medical care was a
proximate cause of Natalie Guyden’s injuries from a urinary tract
infection and her death from urosepsis.
          Lockhart’s motion to dismiss was based on the following objections to the
expert report: (1) it does not expressly address monitoring Natalie’s “worsening
condition, chest retractions, pulse rate, and oxygen saturations”; (2) it assumes that
the pages to Dr. Lockhart’s answering service were forwarded to Dr. Lockhart and
received by him; (3) it assumes that a 30-minute response time to a page is required;
(4) it does not establish that the medical records from the Denton hospital indicated
that Natalie had a UTI when she was discharged and transferred; (5) it speculates that
if Lockhart had diagnosed Natalie in the early morning of June 16, that (a) Natalie
would have been admitted to an acute-care facility, (b) she was stable enough to be
transferred, and (c) acute-care treatment would have saved Natalie’s life; and (6) it
does not address whether Natalie was 50% or more likely to die, notwithstanding any
action by Dr. Lockhart. After a nonevidentiary hearing, the trial court denied
Lockhart’s motion to dismiss.
          Lockhart’s single issue on appeal is that the trial court abused its discretion in
denying the motion to dismiss because Normell Guyden did not file an expert report
that was an objective, good-faith effort to comply with Civil Practice and Remedies
Code section 74.351(r)(6) and American Transitional Care Centers., Inc. v. Palacios.
See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(l) (Vernon Supp. 2008) (stating
“court shall grant a motion challenging the adequacy of an expert report only if it
appears to the court, after hearing, that the report does not represent an objective good
faith effort to comply with the definition of an expert report in Subsection (r)(6).”),
§ 74.351(r)(6) (Vernon Supp. 2008) (requiring “a fair summary of the expert’s
opinions as of the date of the report regarding applicable standards of care, the
manner in which the care rendered by the physician or health care provider failed to
meet the standards, and the causal relationship between that failure and the injury,
harm, or damages claimed.”); Palacios, 46 S.W.3d 873, 877 (Tex. 2001).
          The only information relevant to our inquiry is within the four corners of the
report. Palacios, 46 S.W.3d at 878. A report need not marshal all the plaintiff’s
proof, but it must include the expert’s opinion on each of the elements identified in
the statute. Id. In setting out the expert’s opinions on each of those elements, the
report must provide enough information to fulfill two purposes to constitute a
good-faith effort. Id. at 879. First, the report must inform the defendant of the
specific conduct that the plaintiff has called into question. Id. Second, and equally
important, the report must provide a basis for the trial court to conclude that the
claims have merit. Id.
          On appeal, Lockhart specifically attacks the trial court’s order on each of the
objections he raised in the trial court. Without deciding the validity of each of
Lockhart’s objections, we agree that the expert report is conclusory on the specific
opinion that Lockhart was negligent in not timely transferring Natalie and that this
negligence proximately caused her death:
That is, more likely than not had Dr. Lockhart timely and appropriately
responded to the multiple pages allegedly made by the nursing staff at
the Center after Natalie Guyden’s condition had acutely changed in the
early morning hours of June 16, 2006, the patient would have been
transferred in a timely manner to an acute care facility for the
appropriate and indicated treatment of her urosepsis as detailed above
in the “General” section and elsewhere. Consequently, Natalie Guyden
would not have died from urosepsis.
The expert report states that Lockhart had a duty to transfer Natalie to an acute-care
facility at approximately 2:30 a.m.
          The expert report concludes that Natalie would have lived had she been
transferred to an acute-care facility. The only discussion in the expert report of the
course of treatment for urosepsis, however, is a general one:
If not appropriately treated in a timely manner, urosepsis can progress
to severe sepsis with multiple organ dysfunction including metabolic
acidosis and/or septic shock culminating in cardiovascular collapse,
multiple organ failure and death. However, timely and appropriate
treatment with broad-spectrum antibiotics, most especially antibiotics
with proven antimicrobial efficacy based on C & S results, along with
cardiovascular support and protection from vital end organ damage from
sepsis, more likely than not, will prevent death in patients such as
Natalie Guyden.
The expert report states Natalie should have been transferred at 2:30 a.m., and she
was pronounced dead 11 hours later at 1:30 p.m. Nowhere in the expert report is
there a specific discussion of, and expert opinion stating, whether Natalie’s death
would more likely than not have been prevented in that 11-hour period with proper
medical diagnosis and treatment. For example, there is no discussion of how that
information could have become available to Dr. Lockhart or of what the course of
treatment at an acute-care facility would have been during that 11-hour time frame,
as opposed to the care she was given or not given at the long-term-care facility, other
than a reference to broad spectrum antibiotics and “protection from vital end organ
[kidney, lungs, and heart] damages from sepsis.” Because the expert report does not
contain a fair summary of the basis for an opinion that Dr. Lockhart’s alleged
negligence proximately caused Natalie’s death so as to conclude that the claim
against Dr. Lockhart has merit, it is deficient as to Dr. Lockhart. See Univ. of Tex.
Med. Branch v. Railsback, 259 S.W.3d 860, 864 (Tex. App.—Houston [1st Dist.]
2008, no pet.); see also IHS Acquisition No. 140, Inc. v. Travis, No. 13-07-00481-CV,
slip op. at 13 (Tex. App.—Corpus Christi Apr. 24, 2008, pet. denied) (memorandum
opinion) (“an expert report provides a ‘fair summary’ of causation if it explicates
what a nursing home (or physician) should have done but did not do, and then
explains that the inattention caused otherwise treatable medical conditions to become
fatally unmanageable.”); CHCA Mainland, L.P. v. Wheeler, No. 09-07-00634-CV
(Tex. App.—Beaumont Apr. 10, 2008, no pet.) (memorandum opinion).
          Accordingly, we hold the trial court abused its discretion by denying
Lockhart’s motion to dismiss, sustain Lockhart’s single issue on appeal, and reverse
the trial court’s order. The Clerk of this Court is directed to issue the mandate
immediately to allow further proceedings in the trial court, including whether to grant
a 30-day extension of time for Normell Guyden to file an amended expert report. See
Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c) (Vernon Supp. 2008); Tex. R. App.
P. 18.6 (expediting issuance of mandate in accelerated appeals).
 
 
 
                                                             Jim Sharp
                                                             Justice
Panel consists of Justices Bland, Sharp, and Taft.