Affirmed and Memorandum Opinion filed July 27, 2010.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00657-CV

___________________

 

Rebecca Hart and Wayne Hart, Individually and
on behalf of the Estate of Wayne Hart, Jr., Deceased, Appellants

 

V.

 

Eric Comstock, M.D., Toxicology Associates,
Inc., Roxane Laboratories, Inc. and Gloria Maguadog, M.D.,
Appellees



 



 

On
Appeal from the 212th District Court

Galveston County,
Texas



Trial Court Cause No. 08-CV-0128

 



 

 

MEMORANDUM OPINION

            In
this health-care liability case, the appellants contend the trial court erred
in dismissing their claims against one defendant, denying their motion for
continuance, and granting no-evidence summary judgment in favor of the three
remaining defendants.  We affirm.

I.  Factual and Procedural
Background

            Wayne Hart
Jr. died from methadone toxicity shortly after entering an outpatient drug
treatment program.  On February 8, 2008, his parents, Wayne and Rebecca Hart,
filed a health-care liability suit on behalf of themselves and their son’s
estate.  The defendants included methadone manufacturer Roxane Laboratories,
Inc.; the methadone clinic, Toxicology Associates, Inc.; the clinic’s director,
Dr. Eric Comstock; and Dr. Gloria Maguadog.[1] 
After receiving the Harts’ expert report, Dr. Comstock successfully moved to
dismiss the claims against him on the grounds that the report, which did not
mention him, did not represent a good-faith effort to comply with the statutory
requirements.  Toxicology and Dr. Maguadog also challenged the adequacy of the
expert report as to them, but their motions were denied.  

            In March
2009, Toxicology, Roxane, and Dr. Maguadog filed motions for no-evidence
summary judgment, and a hearing on the motions was set for April 6, 2009.  The
Harts moved to continue the hearing on the motions on the ground that there had
been inadequate time for discovery.  The trial court denied the motion for
continuance, granted summary judgment in favor of Roxane, Toxicology, and Dr.
Maguadog, and denied the Harts’ motion for new trial.  

II.  Issues Presented

            In their
first issue, the Harts contend that the trial court erred in denying their
motion for continuance and granting summary judgment in favor of Toxicology,
Roxane, and Dr. Maguadog.  In their second issue, they argue that the trial
court erred in granting Dr. Comstock’s motion to dismiss.  

 

 

 

III.  Analysis

A.        Denial of
the Motion for Continuance 

            After the
parties have had adequate time for discovery, a party may move for summary
judgment on the grounds that there is no evidence to support one or more of the
elements of a claim or defense on which the adverse party bears the burden of
proof.  Tex. R. Civ. P. 166a(i). 
The trial court may grant a motion to continue a summary-judgment hearing if it
appears “from the affidavits of a party opposing the motion that he cannot for
reasons stated present by affidavit facts essential to justify his
opposition.”  Tex. R. Civ. P.
166a(g).  In determining whether the respondent has had adequate time for
discovery, courts may consider factors such as the nature of the claim; the
evidence necessary to controvert the motion; the length of time the case was on
file; the length of time the no-evidence motion was on file; whether the movant
requested stricter guidelines for discovery; the amount of discovery already
conducted; and whether the discovery deadlines in place were specific or vague.
 Cmty. Initiatives, Inc. v. Chase Bank, 153 S.W.3d 270, 278 (Tex.
App.—El Paso 2004, no pet.).  We review the denial of a motion for continuance
for clear abuse of discretion, defined as “a decision so arbitrary and
unreasonable as to amount to a clear and prejudicial error of law.”  Joe v.
Two Thirty Nine Joint Venture, 145 S.W.3d 150, 161 (Tex. 2004).  

            In their
verified motion to continue the hearings on the motions for summary judgment,
the Harts failed to identify any witness whom they wished to depose or any material
evidence obtainable through further discovery.  They instead stated only that
written discovery was “far from complete,” “additional written discovery is
needed,” and “[n]o depositions have been taken.”[2] 
These conclusory generalizations do not meet the requirements of the Texas Rules
of Civil Procedure.  See Tex. R.
Civ. P. 252 (“If the ground [for continuance] be the want of testimony,
the party applying therefor shall make affidavit that such testimony is
material, showing the materiality thereof, and that he has used due diligence
to procure such testimony, stating such diligence, and the cause of failure, if
known . . . .”); Duerr v. Brown, 262 S.W.3d 63,
78–79 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (stating that a movant for
continuance based on the need for testimony must identify the witness and the
evidence that the testimony is expected to demonstrate).  A trial court does
not abuse its discretion by denying a motion for continuance where, as here,
the movant fails to show why a witness could not have been deposed.  Gregg
v. Cecil, 844 S.W.2d 851, 853 (Tex. App.—Beaumont 1992, no writ).  

            The motion
for continuance was insufficient for the additional reason that the Harts did
not claim to have been diligent in pursuing discovery as the Rules require.  See
Tex. R. Civ. P. 252.  They
served no deposition notices, interrogatories, requests for production, or
requests for admission.  “[T]he failure of a litigant to diligently utilize the
rules of civil procedure for discovery purposes will not authorize the granting
of a continuance.”  State v. Wood Oil Distrib., Inc., 751 S.W.2d
863, 865 (Tex. 1988).  The Harts made several arguments to excuse their lack of
diligence.  First, the Harts stated in their motion that there was a death in
the family of one of their counsel in September 2008, but they did not explain
how this prevented them from initiating discovery.  Second, the Harts argued
that they learned for the first time on January 9, 2009, that the trial court
had signed a scheduling order in the case.  But at a hearing in Galveston on
August 27, 2008, counsel for all parties, including the Harts’ counsel,
obtained a trial date from the court, agreed to the deadlines in the order,
signed the agreed docket control order, and left it with the court for
signature.  The order was signed by the trial judge on September 9, 2008.  Even
after they learned that the court had signed the order, the Harts undertook no
discovery.  Finally, the Harts argued that counsel had discussions about
agreeing to a new docket control order in the January-February 2009 time frame.
 But counsel for the Harts admitted at oral argument that he did not have the
agreement of all counsel; he had no Rule 11 agreement[3]; and even with the
agreement of counsel to continue the case, there is no guarantee that a trial
judge will agree to the continuance. 

None of
the defendants moved for summary judgment before March 6, 2009, the date
clearly stated in the order as the discovery deadline.  By that time, the case
had been pending for more than a year, and just 38 days remained before trial. 
The Harts then allowed half of that time to elapse before they sought a
continuance, and the motion was heard just one week before the case was to be
tried.

            We conclude
that the trial court did not abuse its discretion in denying the Harts’ motion
for continuance and granting summary judgment in favor of Toxicology, Roxane, and
Dr. Maguadog.  We overrule the Harts’ first issue and affirm the judgment as to
those defendants.

B.        Motion to
Dismiss

            Within 120
days after the date a health-care liability claim is filed, a claimant must
serve on each party one or more expert witness reports summarizing the expert’s
opinions “regarding applicable standards of care, the manner in which the care
rendered by the physician or health care provider failed to meet the standards,
and the causal relationship between that failure and the injury, harm, or
damages claimed.”  Tex. Civ. Prac. &
Rem. Code Ann. § 74.351(a), (r)(6) (Vernon 2005).  Thus, an expert
report not only must “provide a basis for the trial court to conclude that the
claims have merit” but also “must inform the defendant of the specific conduct
the plaintiff has called into question.”  Am. Transitional Care Ctrs. of
Tex., Inc. v. Palacios, 46 S.W.3d 873, 879 (Tex. 2001).  If the report is
not an objective good-faith effort to comply with these requirements, a trial
court must grant the health-care provider’s motion challenging the report’s
adequacy.  Tex. Civ. Prac. & Rem.
Code Ann. § 74.351(l).  

            In Dr.
Comstock’s motion to dismiss the claims against him, he correctly notes that he
is never mentioned in the Harts’ expert report.  The Harts filed no response to
Dr. Comstock’s motion, but on appeal, the Harts argue that Dr. Comstock is
vicariously liable for the conduct of Dr. Maguadog, and they point out that if
a defendant is alleged to be vicariously liable for the conduct of the treating
physician, a report that is adequate as to that physician fulfills the expert
report requirement for both defendants.  See Gardner v. U.S. Imaging, Inc.,
274 S.W.3d 669, 671–72 (Tex. 2008) (per curiam).  

            We cannot
consider this argument because the Harts’ claims of vicarious liability were
made for the first time on appeal.  See Tex. R. App. P. 33.1(a) (setting forth prerequisites for
appellate review).  Although the Harts identified Dr. Comstock in their
pleadings as the medical director of Toxicology at the time their son was
treated, they did not impute liability to Dr. Comstock for the actions of another
defendant.[4] 
To the contrary, their allegations against Dr. Comstock are identical to their
allegations against Dr. Maguadog: in each instance, the Harts claimed only that
the named physician failed to provide timely, adequate, or proper medical care
and treatment.  They therefore were required to produce an expert report that specified
the standard of care applicable to Dr. Comstock, identified his breach of the
standard, and explained how his breach caused their son’s death.  See, e.g.,
Univ. of Tex. Med. Branch v. Railsback, 259 S.W.3d 860, 864 (Tex.
App.—Houston [1st Dist.] 2008, no pet.); Baylor Univ. Med. Ctr.v. Biggs,
237 S.W.3d 909, 919 (Tex. App.—Dallas 2007, pet. denied).  The expert
report does none of these things, nor do the Harts contend otherwise.  We
therefore overrule the Harts’ second issue and affirm the trial court’s
judgment.

 

                                                                        /s/        Tracy
Christopher

                                                                                    Justice

 

 

 

Panel consists of Justices
Brown, Sullivan, and Christopher.









[1] An additional defendant, Mallinckrodt, Inc., was non-suited.





[2] In their motion for new
trial and on appeal, the Harts point out that Hurricane Ike struck Galveston on
September 13, 2008; however, they did not move for continuance on this basis or
assert this as a justification for the failure to pursue discovery.  Moreover,
both of the Harts’ attorneys’ offices were and are in Dallas, Texas, and the
Harts have never claimed that the hurricane’s landfall nearly three hundred
miles away had any effect on their attorneys’ abilities to seek evidence
supporting the Harts’ claims.  





[3] See Tex. R. Civ. P. 11.





[4] In evaluating a challenge
to an expert report, courts generally should look no further than the report
itself.  Palacios, 46 S.W.3d at 878.  There appears to be a limited
exception to this rule, allowing the court to look at the claimant’s pleadings
to determine if the claimant has alleged that a health-care provider that is
not named in the expert report is purely vicariously liable for the actions of
its agents or employees that are identified in the report.  See Gardner,
274 S.W.3d at 671–72 and cases cited therein. The Harts made no such
allegations against Dr. Comstock.