**Reversed and Remanded and Memorandum Opinion filed July 11, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00812-CV

---

### CHARLES J. ARAMBURO, M.D., Appellant

### V.

### THELMA BROWN, Appellee

---

**On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2011-65919**

---

## M E M O R A N D U M     O P I N I O N

Appellee Thelma Brown sued appellant Dr. Charles J. Aramburo, alleging that she suffered complications from a surgery he performed. On appeal, Dr. Aramburo contends that the trial court abused its discretion in overruling his objections and denying his motion to dismiss for Brown's failure to serve an expert report in compliance with Chapter 74 of the Texas Civil Practice and Remedies Code. We hold the trial court abused its discretion because the report is

inconsistent and fails to meet the statutory requirements. We therefore reverse the trial court's order and remand for the court to consider whether to grant Brown an extension of time to cure the deficiencies in the report.

## BACKGROUND

In August 2009, Brown was hospitalized at Memorial Hermann Hospital Southwest with gastroesophageal reflux disease. Dr. Aramburo performed surgery to treat Brown's gastrointestinal problems. The day after her surgery, Brown complained to the nursing staff about pain and had a recurrent fever. The nursing staff's notes show that Brown specifically complained about pain in the abdominal area and shoulder. According to Brown's expert, findings of increased pain in these areas are consistent with the development of an infection associated with the surgery. Just days after being discharged, Brown suffered respiratory failure and had to be placed in an intensive care unit. Brown contends these complications, which required additional surgeries and treatments, resulted from the nursing staff at the hospital failing to advise Dr. Aramburo of Brown's pain and fever and from Dr. Aramburo discharging her prematurely.

Brown sued Dr. Aramburo and various Memorial Hermann Hospital entities for negligence and sought past and future damages for physical pain, mental anguish, disfigurement, and lost income. Brown then filed an expert report prepared by Dr. William E. Garrett. In this report, Dr. Garrett states that Dr. Aramburo should not have discharged Brown given her complaints of post-surgery pain and her ongoing fever. Dr. Garrett also states that discharging Brown, who had an ongoing infection, aggravated her condition.

Dr. Aramburo objected that Dr. Garrett's expert report did not meet the requirements of Chapter 74 and filed a motion to dismiss Brown's suit. The trial court signed an order overruling Dr. Aramburo's objections and denying his

2

motion to dismiss. Dr. Aramburo then filed this interlocutory appeal. The hospital is not a party to the appeal.

**ANALYSIS**

In a single issue, Dr. Aramburo contends that the trial court abused its discretion in overruling his objections and denying his motion to dismiss because Brown failed to serve an expert report in compliance with Chapter 74 of the Texas Civil Practice and Remedies Code. Dr. Aramburo claims that Dr. Garrett's expert report is insufficient because it fails to adequately set forth how he breached the standard of care and how any purported breach caused injury to Brown. We agree.

## I. Standard of review

We review a trial court's decision on a motion to dismiss a health care liability claim for an abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). When reviewing these matters, "a court of appeals may not substitute its own judgment for the trial court's judgment." *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). A trial court does not abuse its discretion merely because it decides a discretionary matter differently than an appellate court would in a similar circumstance. *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

## II. The trial court abused its discretion in holding the report sufficient.

### A. Chapter 74 requires expert reports to address specific elements.

This is a medical malpractice case governed by Chapter 74 of the Texas Civil Practice & Remedies Code, which requires the plaintiff to serve an expert

report. An expert report is defined as:

> [A] written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (West 2005). Therefore, the report must fairly summarize three elements: (1) the applicable standard of care, (2) a breach of that standard, and (3) causation. Further, a report must provide enough information to fulfill two purposes: (1) inform the defendant of the specific conduct that the plaintiff has called into question, and (2) provide a basis for the trial court to conclude that the claims have merit. *Univ. of Tex. Med. Branch v. Railsback*, 259 S.W.3d 860, 863 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

A court must grant a motion challenging the adequacy of a report if it is not "an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*). When a report does not fairly summarize the three elements or provide enough information to fulfill the two purposes above, it is not considered an "objective good faith effort" to comply with the statute. *Scoresby v. Santillan*, 346 S.W.3d 546, 555–56 (Tex. 2011). A report that merely states the expert's conclusions also does not amount to a good faith effort. *Palacios*, 46 S.W.3d at 879. It is not necessary, however, for the plaintiff to assemble all his proof or present evidence in the report as if he were in fact litigating the merits. *Id.*

If the expert report is deficient, "the court may grant one 30-day extension to the claimant in order to cure the deficiency." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c). The extension may be granted if the report is served by the statutory deadline, if it contains the expert's opinion that the claim has merit, and if it

4

implicates the defendant's conduct. *Scoresby*, 346 S.W.3d at 557.

### B.  This report does not fairly summarize the required elements.

Dr. Aramburo contends that Dr. Garrett's report is insufficient and does not put him or the trial court on notice of the specific conduct complained of. Specifically, he argues that the expert report is not an "objective good faith effort" because it fails to address how he breached a standard of care and its causation allegations are merely conclusory.

As an initial matter, we reject Dr. Aramburo's argument that the causation statements are wholly conclusory because the report does state a causation theory. Dr. Garrett opines in his report that if Dr. Aramburo had ordered more laboratory tests, it is "highly likely" they would have shown the developing infection. Thus, Brown "would have been kept in the hospital and treated . . . and . . . probably . . . would not have suffered complications." The report also states that "discharging this patient with an ongoing infection exposed her to worsening of her condition and the need for re-hospitalization with acute infections and distress." As discussed next, however, the report does not sufficiently tie this causal chain to any breach of the standard of care.

Dr. Garrett's expert report discusses three theories of negligence: (1) failure to document the reason for performing an open procedure, (2) failure to review and assess laboratory results over the course of a patient's post-operative recovery period, and (3) failure to review the nursing staff notes. As explained below, the report does not provide enough information to meet the statutory requirements on any of these theories. Regarding the first theory, the report is deficient because it does not fairly summarize how Dr. Aramburo's failure to document the reason for performing an open procedure caused Brown's injuries or caused him not to order additional laboratory tests. As to the second theory, failure to review and assess

5

laboratory results, the report is deficient because it does not fairly summarize a breach of the standard of care by Dr. Aramburo. For the third theory, failure to review the nursing staff notes, the report fails to summarize an appropriate standard of care and a breach of that standard. For these reasons, the expert report is not an objective good faith effort to comply with the statute.

### 1. *The expert report fails to fairly summarize causation regarding an open procedure.*

On the first theory, Dr. Aramburo argues that the standard of care alleged is confusing and that Dr. Garrett's report fails to state a breach of the standard. We disagree. The report states that it is a "standard of care to document the reason for doing the procedure as an open procedure" and that Dr. Aramburo breached this standard of care when he failed to document his reason. Thus, the first two elements are present.

We agree with Dr. Aramburo's argument that the report fails to address causation, however. Nowhere in the report is there any claim that Dr. Aramburo's failure to document the reason for performing an open procedure caused Brown's injuries or caused him to not order additional laboratory tests. Accordingly, a fair summary of the required causation element is missing.

### 2. *The expert report fails to fairly summarize a breach of the standard of care regarding review of post-operative laboratory tests.*

On the second theory, Dr. Aramburo argues that Dr. Garrett's report fails to summarize any breach of the standard of care for reviewing and assessing laboratory tests over the course of a patient's post-operative recovery period. We agree. The report clearly states the standard of care: "[I]t is the responsibility of the physician . . . to review and assess laboratory tests over the course of the patient's post-operative recovery period . . . ." The only laboratory tests mentioned

6

in the report are white blood count tests. These tests showed that Brown had a high white blood count on August 21 and 23; Dr. Garrett states that a high white blood count is an important indicator that the patient is developing an infection. Later in the report, Dr. Garrett reveals that on August 24, "[t]here is documentation . . . by a resident physician of the improving (trending down) white count."

Thus, the report does not state that Dr. Aramburo breached the standard of care by not reviewing laboratory results. Rather than alleging a breach of the standard of care, the report says there is evidence that a physician reviewed Brown's latest laboratory test in which her white blood count was trending down. Because a fair summary of the required breach element is missing, the expert's report on this theory does not meet the requirements of Chapter 74.

### 3. *The expert report fails to fairly summarize an appropriate standard of care and breach for reviewing nursing staff notes.*

On the third theory, Dr. Aramburo argues that the report is unclear regarding the standard of care for physicians in reviewing nursing staff notes and contradicts itself regarding whether Dr. Aramburo breached any such standard. We agree.

An inconsistent report may fail to put the defendant on notice as to who had what responsibility and how he departed from the standard of care. *See Gray*, 189 S.W.3d at 860. When a report does not put the defendant on notice of the conduct complained of and what he should have done differently, the report is not a good faith effort to comply with the statute and does not fairly summarize the standard of care and how it was breached. *Palacios*, 46 S.W.3d at 880.

That is the case here because Dr. Garrett's report is self-contradictory regarding a breach by Dr. Aramburo. First, Dr. Garrett states that if the "nursing staff did not advise [Dr. Aramburo] of the elevated temperatures and reports of

7

pain in [the] hospital chart . . . this is below the standard of care for both *physicians* and nurses" (emphasis added). This statement seems to imply that there was a breach of the standard of care by Dr. Aramburo in failing to discover these complaints. The report then contradicts itself when it states that "[i]t is also part of the responsibility of the . . . nursing staff to bring findings such as elevated temperature and . . . pain . . . to the physicians' attention." The report goes on to say that "Dr. Aramburo would be reasonable in discharging the patient given his limited clinical picture of the patient . . . but he should have been advised by the nursing staff of . . . [the] complaints." The report affirmatively states that the "nursing staff failed to follow standards of care." Dr. Garrett opines that he "suspect[s] that Dr. Aramburo was not told by the nursing staff of the new complaints" and "there is no documentation that [he] was notified of these findings."

This inconsistency regarding breach arises again later in the report. In summarizing his opinions, Dr. Garrett states that "Dr. Aramburo should have ordered additional lab tests before discharging the patient." Only a few paragraphs earlier, however, he states that "Dr. Aramburo, *if* he had been advised of the patient's status by nursing staff, should have ordered additional lab tests" (emphasis added).

Moreover, the report does not state the standard of care that Dr. Aramburo had to follow. The report does not say that Dr. Aramburo was required to look at the nursing staff notes; rather, it says the nursing staff should have informed him of the complaints. Dr. Aramburo correctly states that when a plaintiff sues more than one defendant, the expert report must dictate the specific standard of care for "each physician or health care provider." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a); *see Sanjar v. Turner*, 252 S.W.3d 460, 465 (Tex. App.—Houston

[14th Dist.] 2008, no pet.). Given the report's inconsistency, it is unclear whether the appropriate standard of care requires Dr. Aramburo to review the nursing staff notes, or whether it requires the nursing staff to affirmatively communicate patient complaints to him.

Because there is no clear standard of care stated, it is difficult to reconcile the inconsistencies in the report and we are left to our own inferences regarding whether there was a breach. We cannot infer either a standard of care or a breach from the report because we must rely solely on information within the four corners of the expert report. *See Palacios*, 46 S.W.3d at 878. Because we do not know the standard of care, we have no basis for concluding there was a breach. Therefore, we hold that the report does not fairly summarize either the standard of care or a breach of that standard with respect to Brown's third negligence theory.

\*     \*     \*

The report is deficient because it does not provide a fair summary of the expert's opinions on all required elements with respect to any of the negligence theories against Dr. Aramburo. We therefore sustain Dr. Aramburo's sole issue and reverse the trial court's order denying his motion to dismiss. The existence of a deficient report, however, does not automatically lead to the conclusion that Brown's claims should be dismissed.

A thirty-day extension may be granted to cure deficiencies in a timely expert report if the expert opines that the claim has merit and if the defendant's conduct is implicated. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c); *Scoresby*, 346 S.W.3d at 557–58. Brown has requested such an extension in the event her report is held deficient. Under *Leland v. Brandal*, 257 S.W.3d 204, 207 (Tex. 2008), we remand for the trial court to consider whether to grant an extension.

9

## CONCLUSION

For these reasons, we reverse the trial court's order denying Dr. Aramburo's motion to dismiss and remand for the trial court to consider whether to exercise its discretion to grant Brown a thirty-day extension to cure the deficiencies in Dr. Garrett's expert report.

/s/     J. Brett Busby  
Justice

Panel consists of Justices Frost, Brown, and Busby.